# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LADONNA R. DENNIS, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-16-221-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissoner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Ladonna R. Dennis requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 13, 1961, and was fifty-three years old at the time of the administrative hearing (Tr. 32). She completed the twelfth grade, and has worked as a cake decorator, cashier/stocker, and cook/supervisor (Tr. 45, 269). The claimant alleges she has been unable to work since December 1, 2011 due to back problems, depression, and pain in both hands and the left wrist (Tr. 268).

## Procedural History

On May 3, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ John Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated December 19, 2014 (Tr. 14-22). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform less than the full

range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently with consistent pushing/pulling limitations, stand/walk for six hours in an eight-hour workday, and sit for six to eight hours in an eight-hour workday, and that she could frequently finger, handle, and feel bilaterally (Tr. 19). The ALJ thus concluded that the claimant could return to her past relevant work as either a cake decorator or cashier/stocker (Tr. 21).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly assess her RFC, specifically as to her mental impairments, and (ii) failing to properly consider the treatment records related to her mental impairments, particularly in relation to his findings regarding the severity of her mental impairments. Neither of these contentions have merit, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease and bilateral wrist carpal tunnel syndrome, we all as the nonsevere impairments of bilateral hand pain, obese/overweight, and anxiety (Tr. 16). The relevant medical evidence reflects that the claimant was treated for anxiety and depression through her primary care facility at least as far back as 2008 (Tr. 353-360).

Treatment notes from the Good Shepherd Clinic indicated the claimant's reports of mood swings and irritability, as well as prescription management through Greene Country Behavioral (Tr. 400). In the latter part of 2013, the claimant began treatment with Greene Country Behavioral Health Services, and was assessed with major depressive disorder, recurrent, severe, without psychotic features (Tr. 405). The

"Interpretive Summary" states, in part, that the claimant would benefit with treatment and would be able to stabilize, and that her prognosis was good but dependent on her ability to participate in the services (Tr. 405). She reported some continued symptoms, but continued to report improved symptoms (Tr. 415-425). On April 17, 2014, a provider noted that the claimant was showing some areas of improvement, that she continued to have anxiety where she would continue to withdraw from crowds, but that her prognosis was good for her recovery work (Tr. 429-430). By August 2014, the claimant denied depression or anxiety symptoms, stated her medications were working well, and that she would occasionally have flashes of shadows going past her but denied audiovisual hallucinations, and had no complaints or concerns (Tr. 436).

On July 21, 2012, Dr. Beth Jeffries conducted a mental status examination (Tr. 367). Although overweight, the claimant was neat, clean, and appropriately dressed for the appointment, and Dr. Jeffries noted that she spoke about her pain in the historical sense (Tr. 368). She described her mood as a 3 out of 10, and was tearful at times during the evaluation (Tr. 368). She was able to interpret common proverbs, concentration and memory appeared intact, and her judgment and insight appeared intact (Tr. 369). Dr. Jeffries assessed the claimant with, *inter alia*, panic disorder without agoraphobia, mild (Tr. 369). She stated that the claimant's appearance and behaviors were consistent with such a diagnosis, but concluded that the claimant would be able to perform within an occupational setting of her choice, as well as manage the pace and flexibility, and to socialize within a work setting (Tr. 370). She did say that she believed the claimant would benefit from "a few counseling" sessions and that she would be a good candidate

for vocational rehabilitation, but also stated that the claimant could perform simple and complex tasks and did not appear to have psychological, cognitive, and emotional deficits that would significantly interfere with her ability to perform occupationally (Tr. 370).

On June 29, 2013, Dr. Jeffries conducted a second mental status examination (Tr. 392). At that exam, Dr. Jeffries assessed the claimant with major depressive disorder and panic disorder without agoraphobia (Tr. 394). She again noted that the claimant's appearance and behaviors were consistent with her reported symptoms, and further stated that she believed the claimant's panic and anxiety were related to her depression (Tr. 394). She again recommended counseling for the claimant, and stated that with treatment and compliance, the claimant could concentrate over an eight-hour workday and forty-hour workweek, as well as manage the pace and flexibility and possess the social skills to interact with co-worker, supervisors, and the public (Tr. 395). She also again stated that the claimant could understand, remember, and carry out both simple and complex instructions (Tr. 395).

On September 21, 2012, a state reviewing physician found the claimant's anxiety was nonsevere, indicating that she had mild limitations in the three areas of functional limitations, as well as no episodes of decompensation (Tr. 92). These findings were affirmed upon reconsideration, at which time the physician opined that the claimant's mental impairments pose minimal limitations to her daily functioning and her panic disorder was mild (Tr. 123).

In his written opinion at step two, the ALJ found that the claimant's anxiety was medically determinable but nonsevere (Tr. 16-17). He then summarized Dr. Jeffries' two

mental status exams, as well as the treatment notes in the record from the various facilities. He then concluded that the claimant had mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace, as well as no episodes of decompensation, which direct a finding that her mental impairment was nonsevere (Tr. 18). At step four, *inter alia*, the ALJ stated that he found the "claimant's mental impairments pose minimal limitations to her daily functioning and her panic disorder is mild at this time" (Tr. 21). He continued, noting that she had stopped taking her anti-depressant, and also that she reported no problem with activities of daily living. He further noted that the state reviewing physicians had found her mental impairment to be nonsevere, and gave such findings great weight (Tr. 21). He ultimately concluded that the claimant was not disabled (Tr. 21-22).

The claimant's arguments are that the ALJ should have found her mental impairments to be severe, that the ALJ erred in failing to properly consider her intake scores with Greene Country Behavioral Health and improperly relied on Dr. Jeffries' assessments over the treatment notes from Greene Country Behavioral Health, and that such errors are not harmless because this *could* significantly affect her RFC. Furthermore, she asserts that the ALJ failed to consider all her impairments, particularly her nonsevere mental impairment, throughout the sequential evaluation.

Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See,*

*e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) *and* 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Importantly, however, the Tenth Circuit has held that "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Wells v Colvin*, 727 F.3d 1061, 1068-1069 (10th Cir. 2013). "To sum up, to the extent the ALJ relied on his finding of non-severity as a substitute for adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis." *Well*, 727 F.3d at 1069. More specifically, "if the

ALJ finds mild restrictions in the first three functional areas, further analysis is required at step four." *Boyer v. Colvin*, 2016 WL 1170950, at *4 (D. Kan. March 23, 2016).

In *Wells*, the Tenth Circuit indicated that the ALJ is required at step four to "provide a more detailed assessment of Ms. Wells' ability to complete various job functions." *Wells*, 727 F.3d at 1069. ("[T]he ALJ did—as previously mentioned—separately discuss Ms. Wells' mental impairments to some degree, when assessing her credibility as part of his RFC determination. This discussion, though far from comprehensive, *might have satisfied* the ALJ's obligation at step four to provide a more detailed assessment of Ms. Wells' ability to complete various job functions as part of determining her RFC. But we need no determine whether the discussion was procedurally adequate, because the ALJ's conclusions on this point were not supported by substantial evidence.") (emphasis added). In this case, the claimant's RFC is consistent with Dr. Jeffries' opinions and the evidence in the treatment records. Furthermore, the ALJ discussed the claimant's mental impairments in his RFC analysis at step four, including a discussion regarding functional limitations related to daily activities, stress, handling instructions, and the ability to pay attention for long periods of time (Tr. 21). This demonstrates that the ALJ evaluated the claimant's functional limitations with regard to all impairments, including the nonsevere mental impairments. As such, any error in finding that the claimant's mental impairments were nonsevere at step two became harmless when the ALJ then proceeded through the rest of the evaluation and explicitly considered her mental impairments.

The ALJ specifically noted every medical record available in the administrative record, *and still concluded* that she could work. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. *See also Corber*, 20 Fed. Appx. at 822 ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Essentially, the claimant asks the Court to reweigh the evidence in the record, which the Court cannot do. *See Casias*, 933 F.2d at 800 ("In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency.").

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**